UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| ARCH INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>THE BURLINGTON INSURANCE COMPANY; NAVIGATORS SPECIALTY INSURANCE COMPANY; and QUALITY TRAFFIC CONTROL INC.,<br><br>Defendants. | Case No. 5:26-cv-6189 |

**COMPLAINT**

Plaintiff Arch Insurance Company ("Arch"), pursuant to Federal Rule of Civil Procedure 8(a), for its complaint against Defendants The Burlington Insurance Company ("Burlington"), Navigators Specialty Insurance Company ("Navigators"), and Quality Traffic Control Inc. ("QTC") states and alleges as follows:

**I. PARTIES, JURISDICTION, AND VENUE**

1. Arch is an insurance company and a Missouri corporation with its principal place of business in New Jersey.

2. Upon information and belief, Burlington is an insurance company and a North Carolina corporation with its principal place of business in Illinois.

3. Upon information and belief, Navigators is an insurance company and a New York corporation with its principal place of business in New York.

4. Upon information and belief, QTC is an Iowa corporation with its principal place of business in Iowa.

5. This Court has subject matter jurisdiction over Arch's claims for relief pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Arch and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events or omissions giving rise to Arch's claims for relief occurred in this judicial district.

## II. GENERAL ALLEGATIONS

### A. Arch Policy

7. Arch issued policy no. 41PKG8927807 to named insured Herzog Contracting Corp. ("Herzog") for the policy period June 1, 2022 to June 1, 2023 ("Arch policy"), which provides, in part, commercial general liability insurance with limits of $2,000,000 each "occurrence" for "bodily injury" and "property damage." A true and correct copy of the Arch policy, with premium information redacted, is attached as Exhibit 1.

8. The Coverage A – Bodily Injury And Property Damage Liability insuring agreement in the Arch policy provides, in part, that Arch will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" that is caused by an "occurrence" and first takes place during this policy period. (Exhibit 1, pages 79-80.)

9. "Bodily injury" is defined in the Arch policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Exhibit 1, page 92.)

10. "Occurrence" is defined in the Arch policy, in part, as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which

results in 'bodily injury' . . . , neither expected nor intended from the standpoint of any insured." (Exhibit 1, page 100.)

11. The Other Insurance Condition in the Arch policy provides that "[t]his insurance is excess over . . . [a]ny other primary insurance available to you[1] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured" and:

> **(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
>
> > **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
> >
> > **(b)** The total of all deductible and self-insured amounts under all that other insurance.
>
> (4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

(Exhibit 1, page 91.)

12. The Arch policy includes a Transfer Of Rights Of Recovery Against Others To Us Condition, which states in part:

> If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them..

(Exhibit 1, page 92.)

[1] The words "you" and "your" refer to the Named Insured shown in the Declarations, which is Herzog. (Exhibit 1, pages 11, 80.)

**B. QTC's Contractual Obligations to Arch's Named Insured Herzog**

13. Effective September 12, 2022, Herzog entered into Contract I.D. 220819-A01 with the Missouri Highways and Transportation Commission ("MHTC") to be the general contractor for a construction project on I-29 in Andrew and Buchanan Counties, Missouri.

14. Effective September 22, 2022, Herzog entered into a "Subcontract Agreement" with QTC for the placement of temporary traffic control devices for the construction project, which incorporated by reference the entirety of Contract I.D. 220819-A01 between Herzog and the MHTC and included QTC's agreement to be bound by the terms and provisions thereof. A true and correct copy of the Subcontract Agreement is attached as Exhibit 2.

15. In the Subcontract Agreement, QTC agreed to "indemnify, defend, and hold harmless Contractor [Herzog] . . . from and against any and all claims . . . arising out of, or alleged to arise out of . . . the performance of the Subcontractor's [QTC's] work under this Subcontract, regardless of negligence." (Exhibit 2, page 4.)

16. In the Subcontract Agreement, QTC agreed to "handle" all claims, "defend all lawsuits filed against Contractor [Herzog]," "pay all judgments rendered against Contractor [Herzog] in such lawsuits," and "reimburse Contractor [Herzog] in cash upon demand for all reasonable expenses incurred by Contractor [Herzog] . . . including, but not limited to, attorney fees, expert witness fees and court costs" "regardless of whether such claim is caused or alleged to be caused in part by any joint or concurrent negligent act (either active or passive) or omission by a party indemnified." (Exhibit 2, page 4.)

17. In the Subcontract Agreement, QTC agreed to procure and maintain commercial general liability insurance "written on an occurrence basis with limits not less than $1,000,000"

and excess liability insurance "written with limits of not less than $5,000,000 Combined Single Limit." (Exhibit 2, pages 4-5.)

18. In the Subcontract Agreement, QTC agreed to name Herzog as an additional insured under QTC's commercial general liability policy and endorse the commercial general liability policy "to state that the insurance provided to Contractor [Herzog] shall be primary insurance with respect to Contractor [Herzog]." (Exhibit 2, page 5.)

### C. Burlington's Primary, Non-Contributory Coverage Obligations to Herzog as an Insured

19. Burlington issued policy no. 860BG04026-02 to named insured QTC for the policy period July 9, 2022 to July 9, 2023 ("Burlington policy"), which provides, in part, commercial general liability insurance with limits of $1,000,000 each "occurrence" for "bodily injury" and "property damage." A true and correct copy of the Burlington policy, with premium information redacted, is attached as Exhibit 3.

20. The Coverage A – Bodily Injury And Property Damage Liability insuring agreement in the Burlington policy provides in part:

> **1. Insuring Agreement**
>
> **a.** We[2] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .
>
> * * *
>
> **b.** This insurance applies to "bodily injury" . . . only if:

---

2 The words "we," "us," and "our" refer to the company providing this insurance, which is Burlington. (Exhibit 3, pages 1, 68.)

> **(1)** The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory"; and
>
> **(2)** The "bodily injury" . . . occurs during the policy period; . . .

(Exhibit 3, page 68.)

21. "Bodily injury" is defined in the Burlington policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Exhibit 3, page 80.)

22. "Occurrence" is defined in the Burlington policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Exhibit 3, page 82.)

23. The Burlington policy includes an Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization endorsement, which states in part:

> **A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule [Any person or Organization for whom you[3] are performing operations, but only if you have agreed, in a written contract, to add such person or organization as an additional insured on your policy for that location or part thereof, provided such a written contract is fully executed prior to an "occurrence" in which coverage is sought under this policy.], but only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf.
>
> in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

(Exhibit 3, page 84.)

---

[3] The words "you" and "your" refer to the Named Insured shown in the Declarations, which is QTC. (Exhibit 3, pages 2, 68.)

24. The Burlington policy includes an Additional Insured – Owners, Lessees Or Contractors – Automatic Status For Other Parties When Required In Written Construction Agreement endorsement, which states in part:

> **A.** **Section II – Who Is An Insured** is amended to include as an additional insured:
>
> **1.** Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy; and
>
> **2.** Any other person or organization you are required to add as an additional insured under the contract or agreement described in Paragraph 1. above.
>
> Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:
>
> **a.** Your acts or omissions; or
>
> **b.** The acts or omissions of those acting on your behalf,
>
> in the performance of your ongoing operations for the additional insured.

(Exhibit 3, page 114.)

25. The Burlington policy provides that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." (Exhibit 3, page 78.)

26. The Burlington policy includes an Amendment – Other Insurance (Primary And Non-Contributory Coverage) endorsement, which states in part:

> **A.** Paragraph **C.** of this endorsement replaces paragraph **4. Other Insurance of Section IV. Commercial General Liability Conditions**, but only with respect to the insurance afforded to the additional insured(s) scheduled above [Any person or organization named in an Additional Insured endorsement attached to this policy with whom you have agreed, in a written contract, that such person or organization should be provided primary and noncontributory coverage, but only when such written contract is fully executed prior to an "occurrence" in which coverage is sought under this policy.].

* * *

**C. Other Insurance**

Notwithstanding other valid and collectible insurance available to the insured for a loss we cover under the applicable Coverage Part to which this endorsement is modifying, this insurance is primary and non-contributory.

However, this endorsement

**1.** Applies only when you are required by contract, agreement or permit to provide primary and non-contributory coverage for the additional insured, provided such written contract, agreement or permit is fully executed prior to an "occurrence" in which coverage is sought under this policy, and

**2.** Does not apply to any claim, loss or liability due to the sole negligence of the additional insured.

(Exhibit 3, page 101.)

27. Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, because QTC agreed in the Subcontract Agreement to add Herzog as an additional insured on the Burlington policy. (Exhibit 2, page 5; Exhibit 3, pages 84, 114.)

28. The insurance for Herzog under the Burlington policy is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory. (Exhibit 2, page 5; Exhibit 3, page 101.)

**D. Navigators' Primary, Contributory Coverage Obligations to Herzog as an Insured**

29. Navigators issued policy no. HO22EXCZ02EQNIC to named insured QTC for the policy period July 9, 2022 to July 9, 2023 ("Navigator's policy"), which provides commercial excess liability coverage with limits of $5,000,000 each occurrence and in the aggregate above the "underlying limits." A true and correct copy of the Navigators policy is attached as Exhibit 4.

30. The Navigators policy provides that Navigators will pay on behalf of the insured and in excess of "underlying limits" those sums the insured becomes legally obligated to pay as damages for "loss" that occurs during the "policy period" and is caused by an "event" that takes place in the coverage territory, if the "controlling underlying insurance" applies to the "loss." (Exhibit 4, page 4.)

31. Under the Navigators policy, any organization that is an insured in "controlling underlying insurance" is an insured in the Navigators policy to the same extent. (Exhibit 4, page 6.)

32. The "controlling underlying insurance" is the Burlington policy. (Exhibit 4, page 38.)

33. The Navigators policy provides "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than first aid, without our consent." (Exhibit 4, page 8.)

34. The Navigators policy includes an Amendment Of Conditions Other Insurance Primary And Non-Contributing endorsement, which states in part:

> This insurance is excess over any insurance available to the insured except:
>
> a. insurance purchased specifically to apply in excess of this policy; or
>
> b. insurance available to the person or organization shown in the Schedule of this endorsement [When required by written contract executed before the "loss."] as an additional insured on the "controlling underlying insurance."
>
> When this insurance applies on a primary and non-contributing basis, the Limits of Insurance available for the additional insured will be the lesser of:
>
> 1. the amounts shown in item 3 of the Declarations of this policy; or
>
> 2. the amount of insurance you are required to provide the additional insured in the written contract or agreement.

(Exhibit 4, page 8.)

35. Because Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, Herzog is an insured under the Navigators policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog. (Exhibit 2, page 5; Exhibit 3, pages 84, 114; Exhibit 4, page 6.)

36. The insurance for Herzog under the Navigators policy is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory. (Exhibit 2, page 5; Exhibit 4, page 8.)

**E. *Ommen* Lawsuit**

37. On July 3, 2024, Blake Ommen filed a lawsuit in the Buchanan County, Missouri Circuit Court, Case No. 24BU-CC01104, against the MHTC and Herzog, seeking damages for injuries he sustained in a March 4, 2023 automobile collision while his vehicle was stopped in traffic on I-29.

38. On November 22, 2024, Ommen filed his operative amended petition, which joined QTC as a defendant. A true and correct filed-stamped copy of the November 22, 2024 petition is attached as Exhibit 5 (redactions in original).

39. In the amended petition, Ommen alleged in part that Herzog "subcontracted traffic control work to Defendant QTC" and is liable for the negligent acts and omissions of "its employees, and authorized agents, contractors, and servants." (Exhibit 5, ¶¶ 5, 50.)

40. In the amended petition, Ommen alleged in part that, "[a]s part of its contractual obligation with Defendant Herzog, Defendant QTC . . . provided traffic control services for the construction zone near mile marker 50 in Buchanan County," and QTC was negligent in failing to provide advance warning of the traffic condition, selecting and installing inadequate road signs leading up to the construction zone, having inadequate traffic control devices leading up to the construction zone, not having reduced speed limits leading up to the construction zone, and failing to take measures to remedy and protect against the defective and dangerous conditions on Interstate 29 and the construction zone near mile marker 50 in Buchanan County, Missouri. (Exhibit 5, ¶¶ 66, 72-74.)

41. In the amended petition, Ommen alleged in part that "the negligent, reckless, and wrongful acts and omissions of Defendant QTC . . . directly and proximately caused or contributed to cause the severe injuries sustained by Plaintiff and directly and proximately caused or contributed to cause the damages being sought herein." (Exhibit 5, ¶ 78.)

42. Ommen sought an award of damages for past and future medical and rehabilitation expenses, pain, suffering, psychological anguish, and loss of enjoyment of life, as well as lost wages, loss of earning capacity, and emotional distress. (Exhibit 5, ¶ 25.)

43. Herzog denied and continues to deny all allegations of wrongdoing and liability in the *Ommen* lawsuit.

**F. Burlington's, Navigators', and QTC's Wrongful Refusals to Indemnify Herzog Against the *Ommen* Lawsuit and Burlington's and Navigators' Breach of Their Respective Duties of Good Faith and Fair Dealing Owed to Their Insured Herzog**

44. On September 26, 2024, Herzog sent a letter to QTC demanding that QTC and its insurers defend and indemnify Herzog with respect to the *Ommen* lawsuit.

45. On October 25, 2024, QTC's insurer Burlington sent a letter to Herzog acknowledging that Herzog is an additional insured under the Burlington policy with respect to the *Ommen* lawsuit and retained defense counsel for Herzog.

46. On August 29, 2025, Ommen sent a time-limited settlement demand to Herzog, which originally expired on November 27, 2025 ("settlement demand").

47. On September 3, 2025, Burlington sent a letter to its insured Herzog, acknowledging receipt of Ommen's settlement demand to Herzog, denying coverage for the settlement demand, and refusing to even consider responding to Ommen's settlement demand to Herzog:

> [Burlington] is providing a defense ONLY for Herzog as per the Subcontract Agreement. [Burlington] will NOT be responding to this demand on behalf of Herzog.
>
> [Burlington] cannot be held responsible for payment of any amount in the settlement of any claim or satisfaction of any judgment which may be awarded. . . .

A true and correct copy of the September 3, 2025 letter is attached as Exhibit 6.

48. On November 6, 2025, Arch, on behalf of itself and its named insured under the Arch policy, Herzog, sent a letter demanding that Burlington reverse its coverage position and respond to the settlement demand with full authority to protect Burlington's insured Herzog against Ommen's claims and his settlement demand.

49. On November 14, 2025, Herzog sent another letter demanding that Burlington "promptly take the necessary steps to protect Herzog against [Ommen's] claims" and accept the "demand to resolve all claims against Herzog."

50. On November 21, 2025, Burlington reiterated its denial of coverage for Ommen's settlement demand to its insured Herzog including its refusal to even consider responding to Ommen's settlement demand to its insured Herzog because Burlington "will be tendering its full

policy limit to plaintiff on behalf of its named insured [QTC] in response to the policy limit demand" and "any duty to defend or indemnify Herzog [will be] extinguished." A true and correct copy of the November 21, 2025 letter is attached as Exhibit 7.

51. On November 24, 2025, Ommen agreed to extend Herzog's deadline to respond to the settlement demand to December 5, 2025.

52. On November 26, 2025, Arch, on behalf of itself and its named insured Herzog, sent a letter demanding that QTC and Navigators "immediately" respond on Herzog's behalf to Ommen's settlement demand because: (1) Herzog is an insured under the Navigators policy and, according to Burlington, the Burlington policy would soon be exhausted; and (2) QTC has a duty to indemnify Herzog under the Subcontract Agreement.

53. On December 5, 2025, Burlington reiterated its denial of coverage for Ommen's settlement demand to its insured Herzog including its refusal to even consider responding to Ommen's settlement demand on behalf of its insured Herzog, incorrectly asserting that Burlington "is well within its rights to accept the tort plaintiff's statutory policy limits demand on behalf of its named insured [QTC]." A true and correct copy of Burlington's December 5, 2025 letter is attached as Exhibit 8.

54. Also on December 5, 2025, Navigators denied coverage to its insured Herzog for Ommen's settlement demand and refused to even consider responding to Ommen's settlement demand on behalf of its insured Herzog, stating Navigators has "no current duty to defend or indemnify Herzog as an additional insured" because "Navigators has not been provided with documentation substantiating such exhaustion" of the Burlington policy. A true and correct copy of Navigators' December 5, 2025 letter is attached as Exhibit 9.

55. As a result of Burlington's and Navigators' bad faith conduct in abandoning their insured Herzog by failing to provide insurance coverage for and respond to the settlement demand on behalf of Herzog and QTC's breach of its contractual obligations to Herzog under the Subcontract Agreement, Arch was forced to settle Ommen's claims against Herzog for a reasonable amount under the circumstances to protect its named insured Herzog from the risk of exposure to a judgment being entered against it in a greater amount than the settlement demand, even though the insurance provided by the Arch policy for Ommen's claims against Herzog is excess to the primary, non-contributory insurance provided by both the Burlington policy and the Navigators policy to Herzog for Ommen's claims against Herzog.

56. Pursuant to the Transfer Of Rights Of Recovery Against Others To Us Condition in the Arch policy and the Assignment Agreement executed by Herzog ("Assignment"), Herzog has assigned its rights to Arch to recover the settlement paid by Arch on behalf of Herzog to resolve Ommen's claims against Herzog, as well as all other amounts and damages that Herzog has the right to recover from Burlington, Navigators, and QTC as a result of their respective breaches of contractual obligations owed to Herzog and other wrongful conduct related to the *Ommen* lawsuit. A true and correct copy of the Assignment, with confidential information redacted, is attached as Exhibit 10.

## III. CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT AGAINST BURLINGTON

57. Arch restates and incorporates paragraphs 1-56 above as if fully set forth herein.

58. Under the Burlington policy, Burlington must pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which that insurance applies.

59. Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, because QTC agreed in the Subcontract Agreement to add Herzog as an additional insured on the Burlington policy.

60. The *Ommen* lawsuit is a "suit" seeking damages covered under the Burlington policy with respect to Ommen's "bodily injury" caused by an "occurrence," which occurred during the Burlington policy's policy period and within the coverage territory.

61. Herzog's alleged liability for Ommen's "bodily injury" was caused in whole or in part by QTC's acts or omissions in the performance of QTC's ongoing operations for Herzog under the Subcontract Agreement.

62. The insurance for Herzog under the Burlington policy with respect to the *Ommen* lawsuit is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory.

63. Herzog complied with all conditions required for coverage under the Burlington policy with respect to the *Ommen* lawsuit.

64. Alternatively, Herzog's compliance with all conditions required for coverage under the Burlington policy was excused or waived by Burlington's breach of its contractual duties to its insured Herzog and other bad faith conduct.

65. Burlington breached its contractual duty under the Burlington policy to indemnify its insured Herzog against the *Ommen* lawsuit by denying coverage to its insured Herzog for Ommen's settlement demand to Herzog and for refusing to even consider responding to Ommen's settlement demand on behalf of its insured Herzog.

66. As a direct and proximate result of Burlington's breach of its contractual obligations to its insured Herzog under the Burlington policy in connection with the *Ommen* lawsuit, Herzog and Arch have sustained damages including the amount of the settlement to resolve Ommen's claims against Herzog and the attorneys' fees incurred in filing this lawsuit against Burlington.

67. Arch, as Herzog's assignee under the Assignment and equitable subrogee under the terms and conditions of the Arch policy, is entitled to an award of damages caused by Burlington's breach of its contractual duties to Herzog under the Burlington policy, costs, interest, and attorneys' fees.

**COUNT II**
**BAD FAITH AGAINST BURLINGTON**

68. Arch restates and incorporates paragraphs 1-67 above as if fully set forth herein.

69. Under the Burlington policy, Burlington must pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which that insurance applies.

70. Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, because QTC agreed in the Subcontract Agreement to add Herzog as an additional insured on the Burlington policy.

71. The *Ommen* lawsuit is a "suit" seeking damages covered under the Burlington policy with respect to Ommen's "bodily injury" caused by an "occurrence," which occurred during the Burlington policy's policy period and within the coverage territory.

72. Herzog's alleged liability for Ommen's "bodily injury" was caused in whole or in part by QTC's acts or omissions in the performance of QTC's ongoing operations for Herzog under the Subcontract Agreement.

73. The insurance for Herzog under the Burlington policy with respect to the *Ommen* lawsuit is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory.

74. Herzog complied with all conditions required for coverage under the Burlington policy with respect to the *Ommen* lawsuit.

75. Alternatively, Herzog's compliance with all conditions required for coverage under the Burlington policy was excused or waived by Burlington's breach of its contractual duties to its insured Herzog and other bad faith conduct.

76. Burlington breached its duty of good faith and fair dealing to its insured Herzog and acted in bad faith by putting Burlington's own interests above those of its insured Herzog including by: (1) reserving the exclusive right to contest or settle any claims brought against its insured Herzog; (2) prohibiting its insured Herzog from voluntarily assuming any liability or settling any claims without Burlington's consent; (3) refusing to even consider Ommen's settlement demand to its insured Herzog; (4) refusing to accept its insured Herzog's requests for coverage including with respect to Ommen's settlement demand to its insured Herzog; (5) deciding to pay Burlington's limits in settlement of Ommen's claims against QTC without making any attempt to secure a release for its insured Herzog or tendering the limits of the Burlington policy to Navigators and making the limits of the Burlington policy available for settlement of Ommen's claims against all of Burlington's insureds including Herzog; (6) failing and refusing to fully investigate and evaluate Ommen's injuries and claims against its insured Herzog; (7) failing to

recognize the severity of Ommen's injuries and the probability that a verdict against its insured Herzog would exceed the settlement demand; and (8) failing and refusing to consider its insured Herzog's financial interests at all.

77. As a direct and proximate result of Burlington's bad faith conduct in breaching its duty of good faith and fair dealing to its insured Herzog and duty to indemnify its insured Herzog against the *Ommen* lawsuit, Arch and Herzog have sustained damages including the amount of the settlement to resolve Ommen's claims against Herzog and the attorneys' fees incurred in filing this lawsuit against Burlington.

78. Arch, as Herzog's assignee and equitable subrogee, is entitled to an award of damages caused by Burlington's bad faith, costs, interest, and attorneys' fees.

**COUNT III**
**VEXATIOUS REFUSAL TO PAY AGAINST BURLINGTON**

79. Arch restates and incorporates paragraphs 1-78 above as if fully set forth herein.

80. Under the Burlington policy, Burlington must pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which that insurance applies.

81. Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, because QTC agreed in the Subcontract Agreement to add Herzog as an additional insured on the Burlington policy.

82. The *Ommen* lawsuit is a "suit" seeking damages covered under the Burlington policy with respect to Ommen's "bodily injury" caused by an "occurrence," which occurred during the policy period and within the coverage territory.

83. Herzog's alleged liability for Ommen's "bodily injury" was caused in whole or in part by QTC's acts or omissions in the performance of QTC's ongoing operations for Herzog under the Subcontract Agreement.

84. The insurance for Herzog under the Burlington policy with respect to the *Ommen* lawsuit is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory.

85. Herzog complied with all conditions required for coverage under the Burlington policy with respect to the *Ommen* lawsuit.

86. Alternatively, Herzog's compliance with all conditions required for coverage under the Burlington policy was excused or waived by Burlington's breach of its contractual duties to its insured Herzog and other bad faith conduct.

87. Since September 3, 2025, Burlington has repeatedly denied coverage for and refused to pay the settlement of Ommen's claims against its insured Herzog, which is covered under the Burlington policy.

88. Burlington's denial of coverage and refusal to pay the settlement of Ommen's claims against its insured Herzog was vexatious and without reasonable cause or excuse because Burlington: (1) reserved the exclusive right to contest or settle any claims brought against its insured Herzog; (2) prohibited its insured Herzog from voluntarily assuming any liability or settling any claims without Burlington's consent; (3) refused to even consider Ommen's settlement demand to its insured Herzog; (4) refused to accept its insured Herzog's requests for coverage including with respect to Ommen's settlement demand to its insured Herzog; (5) decided to pay Burlington's limits in settlement of Ommen's claims against QTC without making any attempt to secure a release for its insured Herzog or tendering the limits of the Burlington policy to Navigators

and making the limits of the Burlington policy available for settlement of Ommen's claims against all of Burlington's insureds including Herzog; (6) failed and refused to fully investigate and evaluate Ommen's injuries and claims against its insured Herzog; (7) failed to recognize the severity of Ommen's injuries and the probability that a verdict against its insured Herzog would exceed the settlement demand; and (8) failed and refused to provide any factual or legal basis that actually supports its denial of coverage.

89. Pursuant to Mo. Rev. Stat. §§ 375.296 and 375.420, Arch, as Herzog's assignee and equitable subrogee, is entitled to an award of damages, interest, and attorneys' fees as a result of Burlington's vexatious denial of coverage and refusal to pay the settlement of Ommen's claims against its insured Herzog, without reasonable cause or excuse.

**COUNT IV**
**BREACH OF CONTRACT AGAINST NAVIGATORS**

90. Arch restates and incorporates paragraphs 1-89 above as if fully set forth herein.

91. Under the Navigators policy, Navigators must pay on behalf of the insured and in excess of "underlying limits" those sums the insured becomes legally obligated to pay as damages for "loss" that occurs during the "policy period" and is caused by an "event" that takes place in the coverage territory, if the "controlling underlying insurance" applies to the "loss."

92. Any organization that is an insured in "controlling underlying insurance" is an insured in the Navigators policy to the same extent.

93. The "controlling underlying insurance" is the Burlington policy.

94. Because Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, Herzog is an insured under the Navigators policy with respect to liability for "bodily injury"

caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog.

95. The *Ommen* lawsuit is a "suit" seeking damages covered under the Burlington policy with respect to Ommen's "bodily injury" caused by an "occurrence," which occurred during the policy period and within the coverage territory.

96. Herzog's alleged liability for Ommen's "bodily injury" was caused in whole or in part by QTC's acts or omissions in the performance of QTC's ongoing operations for Herzog under the Subcontract Agreement.

97. Because the damages sought by Ommen against Herzog are covered under the Burlington policy, the damages sought by Ommen against Herzog are covered under the Navigators policy.

98. The insurance for Herzog under the Navigators policy with respect to the *Ommen* lawsuit is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory.

99. Herzog complied with all conditions required for coverage under the Navigators policy with respect to the Ommen lawsuit.

100. Alternatively, Herzog's compliance with all conditions required for coverage under the Navigators policy was excused or waived by Navigators' breach of its contractual duties to Herzog and other bad faith conduct.

101. Navigators breached its contractual duty under the Navigators policy to indemnify its insured Herzog against the Ommen lawsuit by denying coverage for Ommen's settlement demand to its insured Herzog and refusing to even consider Ommen's settlement demand to its insured Herzog despite the imminent exhaustion of the Burlington policy.

102. As a direct and proximate result of Navigators' breach of its contractual obligations to indemnify its insured Herzog under the Navigators policy in connection with the Ommen lawsuit, Arch and Herzog have sustained damages including the amount of the settlement to resolve Ommen's claims against Herzog and the attorneys' fees incurred in filing this lawsuit against Navigators.

103. Arch, as Herzog's assignee and equitable subrogee, is entitled to an award of damages caused by Navigators' breach of its contractual duties under the Navigators policy, costs, interest, and attorneys' fees.

**COUNT V**
**BAD FAITH AGAINST NAVIGATORS**

104. Arch restates and incorporates paragraphs 1-103 above as if fully set forth herein.

105. Under the Navigators policy, Navigators must pay on behalf of the insured and in excess of "underlying limits" those sums the insured becomes legally obligated to pay as damages for "loss" that occurs during the "policy period" and is caused by an "event" that takes place in the coverage territory, if the "controlling underlying insurance" applies to the "loss."

106. Any organization that is an insured in "controlling underlying insurance" is an insured in the Navigators policy to the same extent.

107. The "controlling underlying insurance" is the Burlington policy.

108. Because Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, Herzog is an insured under the Navigators policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog.

109. The Ommen lawsuit is a "suit" seeking damages covered under the Burlington policy with respect to Ommen's "bodily injury" caused by an "occurrence," which occurred during the policy period and within the coverage territory.

110. Herzog's alleged liability for Ommen's "bodily injury" was caused in whole or in part by QTC's acts or omissions in the performance of QTC's ongoing operations for Herzog under the Subcontract Agreement.

111. Because the damages sought by Ommen against Herzog are covered under the Burlington policy, the damages sought by Ommen against Herzog are covered under the Navigators policy.

112. The insurance for Herzog under the Navigators policy with respect to the *Ommen* lawsuit is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory.

113. Herzog complied with all conditions required for coverage under the Navigators policy with respect to the Ommen lawsuit.

114. Alternatively, Herzog's compliance with all conditions required for coverage under the Navigators policy was excused or waived by Navigators' breach of its contractual duties to its insured Herzog and other bad faith conduct.

115. Navigators breached its duty of good faith and fair dealing to its insured Herzog and acted in bad faith by putting Navigators' own interests above those of its insured Herzog including by: (1) reserving the exclusive right to contest or settle any claims brought against its insured Herzog; (2) prohibiting its insured Herzog from voluntarily assuming any liability or settling any claims without Navigators' consent; (3) refusing to even consider Ommen's settlement demand to its insured Herzog; (4) refusing to accept its insured Herzog's requests for coverage

including with respect to Ommen's settlement demand to its insured Herzog despite the imminent exhaustion of the Burlington policy; (5) deciding to contribute to the settlement of Ommen's claims against QTC without making any attempt to secure a release for its insured Herzog; (6) failing and refusing to fully investigate and evaluate Ommen's injuries and claims against its insured Herzog at any time including before refusing to even consider Ommen's settlement demand to its insured Herzog despite the imminent exhaustion of the Burlington policy; (7) failing to recognize the severity of Ommen's injuries and the probability that a verdict against its insured Herzog would exceed the settlement demand; (8) failing and refusing to consider its insured Herzog's financial interests at all; and (9) intentionally disregarding the financial interest of its insured Herzog in the hope of escaping the responsibility imposed upon Navigators by the Navigators policy.

116. As a direct and proximate result of Navigators' bad faith conduct in breaching its duty of good faith and fair dealing to its insured Herzog and duty to indemnify its insured Herzog against the Ommen lawsuit, Arch and Herzog have sustained damages including the amount of the settlement to resolve Ommen's claims against Herzog and the attorneys' fees incurred in filing this lawsuit against Navigators.

117. Arch, as Herzog's assignee and equitable subrogee, is entitled to an award of damages caused by Navigators' bad faith, costs, interest, and attorneys' fees.

## COUNT VI
## VEXATIOUS REFUSAL TO PAY AGAINST NAVIGATORS

118. Arch restates and incorporates paragraphs 1-117 above as if fully set forth herein.

119. Under the Navigators policy, Navigators must pay on behalf of the insured and in excess of "underlying limits" those sums the insured becomes legally obligated to pay as damages

for "loss" that occurs during the "policy period" and is caused by an "event" that takes place in the coverage territory, if the "controlling underlying insurance" applies to the "loss."

120. Any organization that is an insured in "controlling underlying insurance" is an insured in the Navigators policy to the same extent.

121. The "controlling underlying insurance" is the Burlington policy.

122. Because Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, Herzog is an insured under the Navigators policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog.

123. The Ommen lawsuit is a "suit" seeking damages covered under the Burlington policy with respect to Ommen's "bodily injury" caused by an "occurrence," which occurred during the policy period and within the coverage territory.

124. Herzog's alleged liability for Ommen's "bodily injury" was caused in whole or in part by QTC's acts or omissions in the performance of QTC's ongoing operations for Herzog under the Subcontract Agreement.

125. Because the damages sought by Ommen against Herzog are covered under the Burlington policy, the damages sought by Ommen against Herzog are covered under the Navigators policy.

126. The insurance for Herzog under the Navigators policy with respect to the *Ommen* lawsuit is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory.

127. Herzog complied with all conditions required for coverage under the Navigators policy with respect to the Ommen lawsuit.

128. Alternatively, Herzog's compliance with all conditions required for coverage under the Navigators policy was excused or waived by Navigators' breach of its contractual duties to its insured Herzog and other bad faith conduct.

129. Since December 5, 2025, Navigators has repeatedly denied coverage for and refused to pay the settlement of Ommen's claims against its insured Herzog, which is covered under the Navigators policy.

130. Navigators' denial of coverage and refusal to pay the settlement of Ommen's claims against its insured Herzog was vexatious and without reasonable cause or excuse because Navigators: (1) reserved the exclusive right to contest or settle any claims brought against its insured Herzog; (2) prohibited its insured Herzog from voluntarily assuming any liability or settling any claims without Navigators' consent; (3) refused to even consider Ommen's settlement demand to its insured Herzog despite the imminent exhaustion of the Burlington policy; (4) refused to accept its insured Herzog's requests for coverage including with respect to Ommen's settlement demand to its insured Herzog; (5) decided to contribute to the settlement of Ommen's claims against QTC without making any attempt to secure a release for its insured Herzog; (6) failed and refused to fully investigate and evaluate Ommen's injuries and claims against its insured Herzog at any time including before refusing to even consider Ommen's settlement demand to its insured Herzog despite the imminent exhaustion of the Burlington policy; (7) failed to recognize the severity of Ommen's injuries and the probability that a verdict against its insured Herzog would exceed the settlement demand; and (8) failed and refused to provide any factual or legal basis that actually supports its denial of coverage.

131. Pursuant to Mo. Rev. Stat. §§ 375.296 and 375.420, Arch, as Herzog's assignee and equitable subrogee, is entitled to an award of damages, interest, and attorneys' fees as a result of Navigators' vexatious denial of coverage and refusal to pay the settlement of Ommen's claims against its insured Herzog, without reasonable cause or excuse.

**COUNT VII**
**BREACH OF CONTRACT AGAINST QTC**

132. Arch restates and incorporates paragraphs 1-131 above as if fully set forth herein.

133. In the Subcontract Agreement, QTC agreed to indemnify, defend, and hold harmless Herzog from and against any and all claims like the *Ommen* lawsuit arising out of, or alleged to arise out of, the performance of QTC's work under the Subcontract Agreement, regardless of negligence.

134. In the Subcontract Agreement, QTC agreed to handle all claims, defend all lawsuits filed against Herzog, pay all judgments rendered against Herzog in such lawsuits, and reimburse Herzog in cash upon demand for all reasonable expenses incurred by Herzog, regardless of whether such claim is caused or alleged to be caused in part by any joint or concurrent negligent act (either active or passive) or omission by a party indemnified.

135. In the Subcontract Agreement, QTC agreed to procure and maintain commercial general liability insurance with limits not less than $1,000,000 and excess liability insurance with limits of not less than $5,000,000.

136. In the Subcontract Agreement, QTC agreed to name Herzog as an additional insured under the Burlington policy and endorse the Burlington policy to state that the additional insured coverage provided to Herzog shall be primary insurance with respect to Herzog.

137. Since September 26, 2024, QTC has refused to acknowledge or accept Herzog's tender of the defense and indemnity of the *Ommen* lawsuit in breach of QTC's contractual obligations under the Subcontract Agreement.

138. Since September 3, 2025, Burlington has repeatedly denied coverage for and refused to pay the settlement of Ommen's claims against its insured Herzog, which is covered under the Burlington policy.

139. Since December 5, 2025, Navigators has repeatedly denied coverage for and refused to pay the settlement of Ommen's claims against its insured Herzog, which is covered under the Navigators policy.

140. As a direct and proximate result of QTC's breach of its contractual obligations under the Subcontract Agreement to defend and indemnify Herzog in connection with the *Ommen* lawsuit, Arch and Herzog have sustained damages including the amount of the settlement to resolve Ommen's claims against Herzog and the attorneys' fees incurred in filing this lawsuit against QTC.

141. As a direct and proximate result of QTC's breach of its contractual obligations under the Subcontract Agreement to provide additional insured coverage for Herzog, Arch and Herzog have sustained damages including the amount of the settlement to resolve Ommen's claims against Herzog and the attorneys' fees incurred in filing this lawsuit against Burlington and Navigators.

142. Arch, as Herzog's assignee and equitable subrogee, is entitled to an award of damages caused by QTC's breach of its contractual duties owed to Herzog under the Subcontract Agreement, costs, interest, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Arch respectfully requests that judgment be entered in its favor as follows:

1. Awarding Arch damages caused by Burlington's breach of its contractual duties to Herzog under the Burlington policy with respect to the *Ommen* lawsuit, bad faith, and vexatious denial of coverage;

2. Awarding Arch damages caused by Navigators' breach of its contractual obligations to Herzog under the Navigators policy with respect to the *Ommen* lawsuit, bad faith, and vexatious denial of coverage;

3. Awarding Arch damages caused by QTC's breaches of the Subcontract Agreement;

4. Awarding Arch costs, pre- and post-judgment interest, and attorneys' fees under applicable law and the Subcontract Agreement; and

5. Awarding Arch such further and additional relief as shall be deemed appropriate in the circumstances.

## DEMAND FOR JURY TRIAL

Arch demands a jury trial on all issues triable of rights by a jury.

DATED this 28th day of September, 2026.

Respectfully submitted,

**BAKER STERCHI COWDEN & RICE LLC**

*/s/ Scott D. Hofer*

Scott D. Hofer MO #44587
Angela Probasco MO #68611
2400 Pershing Road, Suite 500
Kansas City, MO 64108
816-471-2121
shofer@bakersterchi.com
aprobasco@bakersterchi.com

***Attorneys for Plaintiff Arch Insurance Company***