**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**ST. JOSEPH DIVISION**

ARCH INSURANCE COMPANY,
Plaintiff,

v. Case No. 5:26-cv-06189-WBG

THE BURLINGTON INSURANCE COMPANY;
NAVIGATORS SPECIALTY INSURANCE COMPANY; and
QUALITY TRAFFIC CONTROL INC.,
Defendants.

**DEFENDANT THE BURLINGTON COMPANY'S ANSWER TO PLAINTIFF'S COMPLAINT**

Defendant The Burlington Insurance Company ("TBIC"), by its attorneys, TRESSLER, LLP, answers Plaintiff Arch Insurance Company's Complaint. TBIC answers only on its own behalf. Allegations directed solely to other defendants are addressed only to the extent they purport to impose liability on TBIC.

## I. PARTIES, JURISDICTION, AND VENUE

1. **Arch is an insurance company and a Missouri corporation with its principal place of business in New Jersey.**

   ANSWER: Upon information and belief, admit.

2. **Upon information and belief, Burlington is an insurance company and a North Carolina corporation with its principal place of business in Illinois.**

   ANSWER: Denied. Further answering, TBIC is an Illinois corporation with its principal place of business in Hartford Connecticut.

3. **Upon information and belief, Navigators is an insurance company and a New York corporation with its principal place of business in New York.**

   ANSWER: Upon information and belief, admits.

4. **Upon information and belief, QTC is an Iowa corporation with its principal place of business in Iowa.**

ANSWER: Upon information and belief, admits.

5. **This Court has subject matter jurisdiction over Arch's claims for relief pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity of citizenship exists between Arch and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.**

ANSWER: Admit.

6. **Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events or omissions giving rise to Arch's claims for relief occurred in this judicial district.**

ANSWER: Admit

## II. GENERAL ALLEGATIONS

### A. Arch Policy

7. **Arch issued policy no. 41PKG8927807 to named insured Herzog Contracting Corp. ("Herzog") for the policy period June 1, 2022 to June 1, 2023 ("Arch policy"), which provides, in part, commercial general liability insurance with limits of $2,000,000 each "occurrence" for "bodily injury" and "property damage." A true and correct copy of the Arch policy, with premium information redacted, is attached as Exhibit 1.**

ANSWER: TBIC admits only that Exhibit 1 purports to be an Arch policy issued to Herzog Contracting Corp. for the policy period June 1, 2022 to June 1, 2023. The express language of the Policy in Exhibit 1 is the best evidence of the terms, conditions, limits, and definitions as the Policy language speaks for itself. TBIC denies any allegations and legal conclusions in paragraph 7 inconsistent with the referenced Policy in Exhibit 1.

8. **The Coverage A – Bodily Injury And Property Damage Liability insuring agreement in the Arch policy provides, in part, that Arch will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" that is caused by an "occurrence" and first takes place during this policy period. (Exhibit 1, pages 79-80.)**

ANSWER: TBIC admits only that Exhibit 1 purports to be an Arch policy issued to Herzog Contracting Corp. for the policy period June 1, 2022 to June 1, 2023. The express language of the Policy in Exhibit 1 is the best evidence of the terms, conditions,

limits, and definitions as the Policy language speaks for itself. TBIC denies any allegations, definitions, and legal conclusions in paragraph 8 inconsistent with the referenced Policy in Exhibit 1.

9. **"Bodily injury" is defined in the Arch policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Exhibit 1, page 92.)**

ANSWER: TBIC admits only that Exhibit 1 purports to be an Arch policy issued to Herzog Contracting Corp. for the policy period June 1, 2022 to June 1, 2023. The express language of the Policy in Exhibit 1 is the best evidence of the terms, conditions, limits, and definitions as the Policy language speaks for itself. TBIC denies any allegations, definitions, and legal conclusions in paragraph 9 inconsistent with the referenced Policy in Exhibit 1.

10. **"Occurrence" is defined in the Arch policy, in part, as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results in 'bodily injury' . . . , neither expected nor intended from the standpoint of any insured." (Exhibit 1, page 100.)**

ANSWER: TBIC admits only that Exhibit 1 purports to be an Arch policy issued to Herzog Contracting Corp. for the policy period June 1, 2022 to June 1, 2023. The express language of the Policy in Exhibit 1 is the best evidence of the terms, conditions, limits, and definitions as the Policy language speaks for itself. TBIC denies any allegations, definitions, and legal conclusions in paragraph 10 inconsistent with the referenced Policy in Exhibit 1.

11. **The Other Insurance Condition in the Arch policy provides that "[t]his insurance is excess over . . . [a]ny other primary insurance available to you[1] covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured" and:**

> **(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:**
>
> **(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and**
>
> **(b) The total of all deductible and self-insured amounts under all that other insurance.**
>
> **(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not**

[1] **Complaint footnote 1: The words "you" and "your" refer to the Named Insured shown in the Declarations, which is Herzog. (Exhibit 1, pages 11, 80.)**

**bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part. (Exhibit 1, page 91.)**

ANSWER: TBIC admits only that Exhibit 1 purports to be an Arch policy issued to Herzog Contracting Corp. for the policy period June 1, 2022 to June 1, 2023. The express language of the Policy in Exhibit 1 is the best evidence of the terms, conditions, limits, and definitions as the Policy language speaks for itself. TBIC denies any allegations, definitions, and legal conclusions in paragraph 11 inconsistent with the referenced Policy in Exhibit 1.

12. **The Arch policy includes a Transfer Of Rights Of Recovery Against Others To Us Condition, which states in part: If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.. (Exhibit 1, page 92.)**

ANSWER: TBIC admits only that Exhibit 1 purports to be an Arch policy issued to Herzog Contracting Corp. for the policy period June 1, 2022 to June 1, 2023. The express language of the Policy in Exhibit 1 is the best evidence of the terms, conditions, limits, and definitions as the Policy language speaks for itself. TBIC denies any allegations, definitions, and legal conclusions in paragraph 12 inconsistent with the referenced Policy in Exhibit 1.

**B. QTC Contractual Obligations to Herzog**

13. **Effective September 12, 2022, Herzog entered into Contract I.D. 220819-A01 with the Missouri Highways and Transportation Commission ("MHTC") to be the general contractor for a construction project on I-29 in Andrew and Buchanan Counties, Missouri.**

ANSWER: TBIC lacks knowledge or information sufficient to either admit or deny the allegations of paragraph 13 and demands strict proof thereof. For further response, TBIC was not a party to the alleged contact between Herzog and the Missouri Highway and Transportation Commission.

14. **Effective September 22, 2022, Herzog entered into a "Subcontract Agreement" with QTC for the placement of temporary traffic control devices for the construction project, which incorporated by reference the entirety of Contract I.D. 220819-A01 between Herzog and the MHTC and included QTC's agreement to be bound by the terms and provisions thereof. A true and correct copy of the Subcontract Agreement is attached as Exhibit 2.**

ANSWER: TBIC admits only that Exhibit 2 purports to be the Subcontract Agreement between Herzog and QTC, and that the referenced document speaks for itself. TBIC denies any allegations and legal conclusions in Paragraph 14 inconsistent with Exhibit 2.

15. **In the Subcontract Agreement, QTC agreed to "indemnify, defend, and hold harmless Contractor [Herzog] . . . from and against any and all claims . . . arising out of, or alleged to arise out of . . . the performance of the Subcontractor's [QTC's] work under this Subcontract, regardless of negligence." (Exhibit 2, page 4.)**

ANSWER: TBIC admits only that Exhibit 2 purports to be the Subcontract Agreement between Herzog and QTC, and that the referenced document speaks for itself. TBIC denies any allegations and legal conclusions in Paragraph 15 inconsistent with Exhibit 2.

16. **In the Subcontract Agreement, QTC agreed to "handle" all claims, "defend all lawsuits filed against Contractor [Herzog]," "pay all judgments rendered against Contractor [Herzog] in such lawsuits," and "reimburse Contractor [Herzog] in cash upon demand for all reasonable expenses incurred by Contractor [Herzog] . . . including, but not limited to, attorney fees, expert witness fees and court costs" "regardless of whether such claim is caused or alleged to be caused in part by any joint or concurrent negligent act (either active or passive) or omission by a party indemnified." (Exhibit 2, page 4.)**

ANSWER: TBIC admits only that Exhibit 2 purports to be the Subcontract Agreement between Herzog and QTC, and that the referenced document speaks for itself. TBIC denies any allegations and legal conclusions in Paragraph 16 inconsistent with Exhibit 2.

17. **In the Subcontract Agreement, QTC agreed to procure and maintain commercial general liability insurance "written on an occurrence basis with limits not less than $1,000,000" and excess liability insurance "written with limits of not less than $5,000,000 Combined Single Limit." (Exhibit 2, pages 4-5.)**

ANSWER: TBIC admits only that Exhibit 2 purports to be the Subcontract Agreement between Herzog and QTC, and that the referenced document speaks for itself. TBIC denies any allegations and legal conclusions in Paragraph 17 inconsistent with Exhibit 2.

18. **In the Subcontract Agreement, QTC agreed to name Herzog as an additional insured under QTC's commercial general liability policy and endorse the commercial general liability policy "to state that the insurance provided to Contractor [Herzog] shall be primary insurance with respect to Contractor [Herzog]." (Exhibit 2, page 5.)**

ANSWER: TBIC admits only that Exhibit 2 purports to be the Subcontract Agreement between Herzog and QTC, and that the referenced document speaks for itself. TBIC denies any allegations and legal conclusions in Paragraph 18 inconsistent with Exhibit 2.

## C. Burlington Policy and Additional Insured Coverage

19. **Burlington issued policy no. 860BG04026-02 to named insured QTC for the policy period July 9, 2022 to July 9, 2023 ("Burlington policy"), which provides, in part, commercial general liability insurance with limits of $1,000,000 each "occurrence" for "bodily injury" and "property damage." A true and correct copy of the Burlington policy, with premium information redacted, is attached as Exhibit 3.**

ANSWER: TBIC admits that it issued policy no. 860BG04026-02 to QTC for July 9, 2022 through July 9, 2023, with a stated $1,000,000 each-occurrence limit, subject to all terms, conditions, exclusions, endorsements, and limits of the complete policy. The terms of the Burlington Policy speak for themselves. TBIC denies any allegations and legal conclusions in Paragraph 19 inconsistent with express language of the Burlington Policy, attached as Exhibit 3.

20. **The Coverage A – Bodily Injury And Property Damage Liability insuring agreement in the Burlington policy provides in part:**

> **1. Insuring Agreement**
>
> **a. We[2] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" . . . to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .**
>
> *** * ***
>
> **b. This insurance applies to "bodily injury" . . . only if:**
>
> **(1) The "bodily injury" . . . is caused by an "occurrence" that takes place in the "coverage territory"; and**
>
> **(2) The "bodily injury" . . . occurs during the policy period; . . .**

**(Exhibit 3, page 68.)**

[2] **Complaint footnote 2: The words "we," "us," and "our" refer to the company providing this insurance, which is Burlington. (Exhibit 3, pages 1, 68.)**

ANSWER: TBIC admits that its policy contains the type of provision identified in this paragraph. The terms of the Burlington Policy speak for themselves. TBIC denies any allegations and legal conclusions in Paragraph 20 inconsistent with express language of the Burlington Policy, attached as Exhibit 3.

21. **"Bodily injury" is defined in the Burlington policy as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (Exhibit 3, page 80.)**

ANSWER: TBIC admits that its policy contains the type of provision identified in this paragraph. The terms of the Burlington Policy speak for themselves. TBIC denies any allegations and legal conclusions in Paragraph 21 inconsistent with express language of the Burlington Policy, attached as Exhibit 3.

22. **"Occurrence" is defined in the Burlington policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Exhibit 3, page 82.)**

ANSWER: TBIC admits that its policy contains the type of provision identified in this paragraph. The terms of the Burlington Policy speak for themselves. TBIC denies any allegations and legal conclusions in Paragraph 22 inconsistent with express language of the Burlington Policy, attached as Exhibit 3.

23. **The Burlington policy includes an Additional Insured – Owners, Lessees Or Contractors – Scheduled Person Or Organization endorsement, which states in part:**

> **A. Section II – Who Is An Insured is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule [Any person or Organization for whom you[3] are performing operations, but only if you have agreed, in a written contract, to add such person or organization as an additional insured on your policy for that location or part thereof, provided such a written contract is fully executed prior to an "occurrence" in which coverage is sought under this policy.], but only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:**
>
> **1. Your acts or omissions; or**
>
> **2. The acts or omissions of those acting on your behalf. in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.**

**(Exhibit 3, page 84.)**

---

[3] **Complaint footnote 3: The words "you" and "your" refer to the Named Insured shown in the Declarations, which is QTC. (Exhibit 3, pages 2, 68.)**

ANSWER: TBIC admits that its policy contains the type of provision identified in this paragraph. The terms of the Burlington Policy speak for themselves. TBIC denies any allegations and legal conclusions in Paragraph 23 inconsistent with express language of the Burlington Policy, attached as Exhibit 3.

24. **The Burlington policy includes an Additional Insured – Owners, Lessees Or Contractors – Automatic Status For Other Parties When Required In Written Construction Agreement endorsement, which states in part:**

**A. Section II – Who Is An Insured is amended to include as an additional insured:**

**1. Any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy; and**

**2. Any other person or organization you are required to add as an additional insured under the contract or agreement described in Paragraph 1. above.**

**Such person(s) or organization(s) is an additional insured only with respect to liability for "bodily injury" . . . caused, in whole or in part, by:**

**a. Your acts or omissions; or**
**b. The acts or omissions of those acting on your behalf, in the performance of your ongoing operations for the additional insured.**

**(Exhibit 3, page 114.)**

ANSWER: TBIC admits that its policy contains the type of provision identified in this paragraph. The terms of the Burlington Policy speak for themselves. TBIC denies any allegations and legal conclusions in Paragraph 24 inconsistent with express language of the Burlington Policy, attached as Exhibit 3.

25. **The Burlington policy provides that "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent." (Exhibit 3, page 78.)**

ANSWER: TBIC admits that its policy contains the type of provision identified in this paragraph. The terms of the Burlington Policy speak for themselves. TBIC denies any allegations and legal conclusions in Paragraph 25 inconsistent with express language of the Burlington Policy, attached as Exhibit 3.

26. **The Burlington policy includes an Amendment – Other Insurance (Primary And Non-Contributory Coverage) endorsement, which states in part:**

> **A. Paragraph C. of this endorsement replaces paragraph 4. Other Insurance of Section IV. Commercial General Liability Conditions, but only with respect to the insurance afforded to the additional insured(s) scheduled above [Any person or organization named in an Additional Insured endorsement attached to this policy with whom you have agreed, in a written contract, that such person or organization should be provided primary and noncontributory coverage, but only when such written contract is fully executed prior to an "occurrence" in which coverage is sought under this policy.].**
>
> *** * ***
>
> **C. Other Insurance Notwithstanding other valid and collectible insurance available to the insured for a loss we cover under the applicable Coverage Part to which this endorsement is modifying, this insurance is primary and non-contributory. However, this endorsement**
>
> **1. Applies only when you are required by contract, agreement or permit to provide primary and non-contributory coverage for the additional insured, provided such written contract, agreement or permit is fully executed prior to an "occurrence" in which coverage is sought under this policy, and**
>
> **2. Does not apply to any claim, loss or liability due to the sole negligence of the additional insured.**

**(Exhibit 3, page 101.)**

ANSWER: TBIC admits that its policy contains the type of provision identified in this paragraph. The terms of the Burlington Policy speak for themselves. TBIC denies any allegations and legal conclusions in Paragraph 26 inconsistent with express language of the Burlington Policy, attached as Exhibit 3.

27. **Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, because QTC agreed in the Subcontract Agreement to add Herzog as an additional insured on the Burlington policy. (Exhibit 2, page 5; Exhibit 3, pages 84, 114.)**

ANSWER: TBIC admits that it accepted Herzog as an additional insured for defense of the Ommen lawsuit, subject to the terms of the Burlington Policy. Additional insured coverage extends only as provided by the applicable endorsements. TBIC denies that

additional insured status creates a separate limit or an unconditional obligation to fund the Herzog settlement.

28. **The insurance for Herzog under the Burlington policy is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory. (Exhibit 2, page 5; Exhibit 3, page 101.)**

ANSWER: TBIC admits that its policy includes a primary and noncontributory endorsement, subject to the endorsement's requirements and limitations. TBIC denies that the subcontract independently enlarges its policy obligations, creates a separate limit for Herzog, or requires payment after proper exhaustion of the applicable limit.

**D Navigators Policy and Alleged Coverage**

29. **Navigators issued policy no. HO22EXCZ02EQNIC to named insured QTC for the policy period July 9, 2022 to July 9, 2023 ("Navigator's policy"), which provides commercial excess liability coverage with limits of $5,000,000 each occurrence and in the aggregate above the "underlying limits." A true and correct copy of the Navigators policy is attached as Exhibit 4.**

ANSWER: The allegations contained in Paragraph 29 are not directed toward Defendant TBIC, and therefore, no response is required. To the extent a response is deemed necessary, TBIC denies any allegations that purport to impose liability upon it and demands strict proof thereof.

30. **The Navigators policy provides that Navigators will pay on behalf of the insured and in excess of "underlying limits" those sums the insured becomes legally obligated to pay as damages for "loss" that occurs during the "policy period" and is caused by an "event" that takes place in the coverage territory, if the "controlling underlying insurance" applies to the "loss." (Exhibit 4, page 4.)**

ANSWER: The allegations contained in Paragraph 30 are not directed toward Defendant TBIC, and therefore, no response is required. To the extent a response is deemed necessary, TBIC denies any allegations that purport to impose liability upon it and demands strict proof thereof.

31. **Under the Navigators policy, any organization that is an insured in "controlling underlying insurance" is an insured in the Navigators policy to the same extent. (Exhibit 4, page 6.)**

ANSWER: The allegations contained in Paragraph 31 are not directed toward Defendant TBIC, and therefore, no response is required. To the extent a response is deemed necessary, TBIC denies any allegations that purport to impose liability upon it and demands strict proof thereof.

32. **The "controlling underlying insurance" is the Burlington policy. (Exhibit 4, page 38.)**

ANSWER: The allegations contained in Paragraph 32 are not directed toward Defendant TBIC, and therefore, no response is required. To the extent a response is deemed necessary, TBIC denies any allegations that purport to impose liability upon it and demands strict proof thereof.

33. **The Navigators policy provides "[n]o insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation or incur any expense, other than first aid, without our consent." (Exhibit 4, page 8.)**

ANSWER: The allegations contained in Paragraph 33 are not directed toward Defendant TBIC, and therefore, no response is required. To the extent a response is deemed necessary, TBIC denies any allegations that purport to impose liability upon it and demands strict proof thereof.

34. **The Navigators policy includes an Amendment Of Conditions Other Insurance Primary And Non-Contributing endorsement, which states in part:**

> **This insurance is excess over any insurance available to the insured except:**
>
> **a. insurance purchased specifically to apply in excess of this policy; or**
>
> **b. insurance available to the person or organization shown in the Schedule of this endorsement [When required by written contract executed before the "loss."] as an additional insured on the "controlling underlying insurance."**

**When this insurance applies on a primary and non-contributing basis, the Limits of Insurance available for the additional insured will be the lesser of:**

> **1. the amounts shown in item 3 of the Declarations of this policy; or**
>
> **2. the amount of insurance you are required to provide the additional insured in the written contract or agreement.**

**(Exhibit 4, page 8.)**

ANSWER: The allegations contained in Paragraph 34 are not directed toward Defendant TBIC, and therefore, no response is required. To the extent a response is deemed necessary, TBIC denies any allegations that purport to impose liability upon it and demands strict proof thereof.

35. **Because Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, Herzog is an insured under the Navigators policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog. (Exhibit 2, page 5; Exhibit 3, pages 84, 114; Exhibit 4, page 6.)**

ANSWER: The allegations contained in Paragraph 35 are not directed toward Defendant TBIC, and therefore, no response is required. To the extent a response is deemed necessary, TBIC denies any allegations that purport to impose liability upon it and demands strict proof thereof.

36. **The insurance for Herzog under the Navigators policy is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory. (Exhibit 2, page 5; Exhibit 4, page 8.)**

ANSWER: The allegations contained in Paragraph 36 are not directed toward Defendant TBIC, and therefore, no response is required. To the extent a response is deemed necessary, TBIC denies any allegations that purport to impose liability upon it and demands strict proof thereof.

**E Ommen Lawsuit**

37. **On July 3, 2024, Blake Ommen filed a lawsuit in the Buchanan County, Missouri Circuit Court, Case No. 24BU-CC01104, against the MHTC and Herzog, seeking damages for injuries he sustained in a March 4, 2023 automobile collision while his vehicle was stopped in traffic on I-29.**

ANSWER: Admit.

38. **On November 22, 2024, Ommen filed his operative amended petition, which joined QTC as a defendant. A true and correct filed-stamped copy of the November 22, 2024 petition is attached as Exhibit 5 (redactions in original).**

ANSWER: Admit.

39. **In the amended petition, Ommen alleged in part that Herzog "subcontracted traffic control work to Defendant QTC" and is liable for the negligent acts and omissions of "its employees, and authorized agents, contractors, and servants." (Exhibit 5, ¶¶ 5, 50.)**

ANSWER: TBIC admits that the underlying pleading contains allegations of the general nature described. TBIC does not admit the truth of Ommen's allegations or the accuracy of the quoted excerpts.

40. **In the amended petition, Ommen alleged in part that, "[a]s part of its contractual obligation with Defendant Herzog, Defendant QTC . . . provided traffic control services for the construction zone near mile marker 50 in Buchanan County," and QTC was negligent in failing to provide advance warning of the traffic condition, selecting and installing inadequate road signs leading up to the construction zone, having inadequate traffic control devices leading up to the construction zone, not having reduced speed limits leading up to the construction zone, and failing to take measures to remedy and protect against the defective and dangerous conditions on Interstate 29 and the construction zone near mile marker 50 in Buchanan County, Missouri. (Exhibit 5, ¶¶ 66, 72-74.)**

ANSWER: TBIC admits that the underlying pleading contains allegations of the general nature described. TBIC does not admit the truth of Ommen's allegations or the accuracy of the quoted excerpts.

41. **In the amended petition, Ommen alleged in part that "the negligent, reckless, and wrongful acts and omissions of Defendant QTC . . . directly and proximately caused or contributed to cause the severe injuries sustained by Plaintiff and directly and proximately caused or contributed to cause the damages being sought herein." (Exhibit 5, ¶ 78.)**

ANSWER: TBIC admits that the underlying pleading contains allegations of the general nature described. TBIC does not admit the truth of Ommen's allegations or the accuracy of the quoted excerpts.

42. **Ommen sought an award of damages for past and future medical and rehabilitation expenses, pain, suffering, psychological anguish, and loss of enjoyment of life, as well as lost wages, loss of earning capacity, and emotional distress. (Exhibit 5, ¶ 25.)**

ANSWER: Admit.

43. **Herzog denied and continues to deny all allegations of wrongdoing and liability in the Ommen lawsuit.**

ANSWER: Admit.

**F Burlington's, Navigators', and QTC's Wrongful Refusals to Indemnify Herzog Against the Ommen Lawsuit and Burlington's and Navigators' Breach of Their Respective Duties of Good Faith and Fair Dealing Owed to Their Insured Herzog**

44. **On September 26, 2024, Herzog sent a letter to QTC demanding that QTC and its insurers defend and indemnify Herzog with respect to the Ommen lawsuit.**

ANSWER: Admit.

45. **On October 25, 2024, QTC's insurer Burlington sent a letter to Herzog acknowledging that Herzog is an additional insured under the Burlington policy with respect to the Ommen lawsuit and retained defense counsel for Herzog.**

ANSWER: Admit.

46. **On August 29, 2025, Ommen sent a time-limited settlement demand to Herzog, which originally expired on November 27, 2025 ("settlement demand").**

ANSWER: Admit.

47. **On September 3, 2025, Burlington sent a letter to its insured Herzog, acknowledging receipt of Ommen's settlement demand to Herzog, denying coverage for the settlement demand, and refusing to even consider responding to Ommen's settlement demand to Herzog:**

> **[Burlington] is providing a defense ONLY for Herzog as per the Subcontract Agreement.**
>
> **[Burlington] will NOT be responding to this demand on behalf of Herzog. [Burlington] cannot be held responsible for payment of any amount in the settlement of any claim or satisfaction of any judgment which may be awarded. . . .**

**A true and correct copy of the September 3, 2025 letter is attached as Exhibit 6.**

ANSWER: TBIC admits that it sent Herzog a letter dated September 3, 2025 communicating its position concerning the demand. TBIC denies that the selected quotations fairly state the entirety of the letter or establish a wrongful denial, bad faith, or a refusal to consider Herzog's interests. TBIC denies any characterization inconsistent with the complete letter and policy. The accuracy and completeness of the unattached Exhibit 6 are not admitted.

48. **On November 6, 2025, Arch, on behalf of itself and its named insured under the Arch policy, Herzog, sent a letter demanding that Burlington reverse its coverage**

**position and respond to the settlement demand with full authority to protect Burlington's insured Herzog against Ommen's claims and his settlement demand.**

ANSWER: TBIC admits that Arch sent correspondence requesting that it respond to the demand against Herzog. TBIC denies that the correspondence established any additional policy limit or that TBIC was obligated to take the action demanded. Any remaining characterization of the letter is denied.

49. **On November 14, 2025, Herzog sent another letter demanding that Burlington "promptly take the necessary steps to protect Herzog against [Ommen's] claims" and accept the "demand to resolve all claims against Herzog."**

ANSWER: TBIC admits that Herzog requested that it protect its interests and resolve the claims. TBIC denies any implication that it disregarded Herzog's interests or was required to provide a second each-occurrence limit. Any remaining characterization of the letter is denied.

50. **On November 21, 2025, Burlington reiterated its denial of coverage for Ommen's settlement demand to its insured Herzog including its refusal to even consider responding to Ommen's settlement demand to its insured Herzog because Burlington "will be tendering its full policy limit to plaintiff on behalf of its named insured [QTC] in response to the policy limit demand" and "any duty to defend or indemnify Herzog [will be] extinguished." A true and correct copy of the November 21, 2025 letter is attached as Exhibit 7.**

ANSWER: TBIC admits that its November 21, 2025 letter advised of its intention to tender the applicable limit in response to the demand on behalf of QTC and stated its position concerning exhaustion. TBIC denies that merely announcing or tendering limits, without an effective payment or other policy-compliant exhaustion, necessarily terminated all duties. TBIC denies the allegations of wrongful conduct and any characterization inconsistent with the complete letter and policy;

51. **On November 24, 2025, Ommen agreed to extend Herzog's deadline to respond to the settlement demand to December 5, 2025.**

ANSWER: TBIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

52. **On November 26, 2025, Arch, on behalf of itself and its named insured Herzog, sent a letter demanding that QTC and Navigators "immediately" respond on Herzog's behalf to Ommen's settlement demand because: (1) Herzog is an insured under the Navigators policy and, according to Burlington, the Burlington policy would soon be exhausted; and (2) QTC has a duty to indemnify Herzog under the Subcontract Agreement.**

ANSWER: TBIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

53. **On December 5, 2025, Burlington reiterated its denial of coverage for Ommen's settlement demand to its insured Herzog including its refusal to even consider responding to Ommen's settlement demand on behalf of its insured Herzog, incorrectly asserting that Burlington "is well within its rights to accept the tort plaintiff's statutory policy limits demand on behalf of its named insured [QTC]." A true and correct copy of Burlington's December 5, 2025 letter is attached as Exhibit 8.**

ANSWER: TBIC admits that it sent a December 5, 2025 letter stating its position that it could accept the demand on behalf of its named insured QTC. TBIC denies that this position was incorrect, that it acted in bad faith, or that the selected quotation establishes any breach. TBIC denies that additional insured status creates a separate limit, an unconditional obligation to fund the Herzog settlement, or additional payment after proper exhaustion of the applicable limit. TBIC denies any characterization inconsistent with the complete December 5, 2025 letter and policy; the accuracy and completeness of the unattached Exhibit 8 are not admitted.

54. **Also on December 5, 2025, Navigators denied coverage to its insured Herzog for Ommen's settlement demand and refused to even consider responding to Ommen's settlement demand on behalf of its insured Herzog, stating Navigators has "no current duty to defend or indemnify Herzog as an additional insured" because "Navigators has not been provided with documentation substantiating such exhaustion" of the Burlington policy. A true and correct copy of Navigators' December 5, 2025 letter is attached as Exhibit 9.**

ANSWER: TBIC lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this paragraph and therefore denies them.

55. **As a result of Burlington's and Navigators' bad faith conduct in abandoning their insured Herzog by failing to provide insurance coverage for and respond to the settlement demand on behalf of Herzog and QTC's breach of its contractual obligations to Herzog under the Subcontract Agreement, Arch was forced to settle Ommen's claims against Herzog for a reasonable amount under the circumstances to protect its named insured Herzog from the risk of exposure to a judgment being entered against it in a greater amount than the settlement demand, even though the insurance provided by the Arch policy for Ommen's claims against Herzog is excess to the primary, non-contributory insurance provided by both the Burlington policy and the Navigators policy to Herzog for Ommen's claims against Herzog.**

ANSWER: Denied.

56. **Pursuant to the Transfer Of Rights Of Recovery Against Others To Us Condition in the Arch policy and the Assignment Agreement executed by Herzog**

**(“Assignment”), Herzog has assigned its rights to Arch to recover the settlement paid by Arch on behalf of Herzog to resolve Ommen’s claims against Herzog, as well as all other amounts and damages that Herzog has the right to recover from Burlington, Navigators, and QTC as a result of their respective breaches of contractual obligations owed to Herzog and other wrongful conduct related to the Ommen lawsuit. A true and correct copy of the Assignment, with confidential information redacted, is attached as Exhibit 10.**

ANSWER: Denied.

## III. CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT AGAINST BURLINGTON

**57. Arch restates and incorporates paragraphs 1-56 above as if fully set forth herein.**

ANSWER: TBIC incorporates its responses to the preceding paragraphs 1-56 as if fully set forth here, including each admission, qualification, and denial, and denies that incorporation establishes liability.

**58. Under the Burlington policy, Burlington must pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” to which that insurance applies.**

ANSWER: TBIC admits that the insuring agreement contains an obligation to pay covered damages the insured becomes legally obligated to pay, subject to the complete policy, including applicable limits and exhaustion provisions. TBIC denies that additional insured status creates a separate limit, an unconditional obligation to fund the Herzog settlement, or additional payment after proper exhaustion of the applicable limit. TBIC further denies any allegations and conclusions inconsistent with the Burlington policy attached as Exhibit 3.

**59. Herzog is an insured under the Burlington policy with respect to liability for “bodily injury” caused, in whole or in part, by QTC’s acts or omissions or the acts or omissions of those acting on QTC’s behalf, in the performance of QTC’s ongoing operations for Herzog, because QTC agreed in the Subcontract Agreement to add Herzog as an additional insured on the Burlington policy.**

ANSWER: TBIC admits that it accepted Herzog as an additional insured for defense of the Ommen lawsuit, subject to the term of the Burlington Policy. Additional insured coverage extends only as provided by the applicable endorsements. TBIC denies that additional insured status creates a separate limit, an unconditional obligation to fund the Herzog settlement, or additional payment after proper exhaustion of the applicable limit.

60. **The Ommen lawsuit is a "suit" seeking damages covered under the Burlington policy with respect to Ommen's "bodily injury" caused by an "occurrence," which occurred during the Burlington policy's policy period and within the coverage territory.**

ANSWER: The allegations of Paragraph 60 are legal conclusions to which no response is required.

61. **Herzog's alleged liability for Ommen's "bodily injury" was caused in whole or in part by QTC's acts or omissions in the performance of QTC's ongoing operations for Herzog under the Subcontract Agreement.**

ANSWER: Denied.

62. **The insurance for Herzog under the Burlington policy with respect to the Ommen lawsuit is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory.**

ANSWER: TBIC admits that its policy includes a primary and noncontributory endorsement, subject to the endorsement's requirements and limitations. TBIC denies that the subcontract independently enlarges its policy obligations, creates a separate limit for Herzog, or requires payment after proper exhaustion of the applicable limit.

63. **Herzog complied with all conditions required for coverage under the Burlington policy with respect to the Ommen lawsuit.**

ANSWER: Denied.

64. **Alternatively, Herzog's compliance with all conditions required for coverage under the Burlington policy was excused or waived by Burlington's breach of its contractual duties to its insured Herzog and other bad faith conduct.**

ANSWER: Denied.

65. **Burlington breached its contractual duty under the Burlington policy to indemnify its insured Herzog against the Ommen lawsuit by denying coverage to its insured Herzog for Ommen's settlement demand to Herzog and for refusing to even consider responding to Ommen's settlement demand on behalf of its insured Herzog.**

ANSWER: Denied.

66. **As a direct and proximate result of Burlington's breach of its contractual obligations to its insured Herzog under the Burlington policy in connection with the Ommen lawsuit, Herzog and Arch have sustained damages including the amount of the settlement to resolve Ommen's claims against Herzog and the attorneys' fees incurred in filing this lawsuit against Burlington.**

ANSWER: Denied.

67. **Arch, as Herzog's assignee under the Assignment and equitable subrogee under the terms and conditions of the Arch policy, is entitled to an award of damages caused by Burlington's breach of its contractual duties to Herzog under the Burlington policy, costs, interest, and attorneys' fees.**

ANSWER: Denied.

**COUNT II**
**BAD FAITH AGAINST BURLINGTON**

68. **Arch restates and incorporates paragraphs 1-67 above as if fully set forth herein.**

ANSWER: TBIC incorporates its responses to the preceding paragraphs 1-67 as if fully set forth here, including each admission, qualification, and denial, and denies that incorporation establishes liability.

69. **Under the Burlington policy, Burlington must pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which that insurance applies.**

ANSWER: TBIC admits that the insuring agreement contains an obligation to pay covered damages the insured becomes legally obligated to pay, subject to the complete policy, including applicable limits and exhaustion provisions. TBIC denies that additional insured status creates a separate limit, an unconditional obligation to fund the Herzog settlement, or additional payment after proper exhaustion of the applicable limit. TBIC further denies any allegations and conclusions inconsistent with the Burlington policy attached as Exhibit 3.

70. **Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, because QTC agreed in the Subcontract Agreement to add Herzog as an additional insured on the Burlington policy.**

ANSWER: TBIC admits that it accepted Herzog as an additional insured for defense of the Ommen lawsuit, subject to the terms of the Burlington Policy. Additional insured coverage extends only as provided by the applicable endorsements. Burlington denies that additional insured status creates a separate limit, an unconditional obligation to fund

the Herzog settlement, or additional payment after proper exhaustion of the applicable limit.

71. **The Ommen lawsuit is a "suit" seeking damages covered under the Burlington policy with respect to Ommen's "bodily injury" caused by an "occurrence," which occurred during the Burlington policy's policy period and within the coverage territory.**

ANSWER: The allegations of Paragraph 71 are legal conclusions to which no response is required.

72. **Herzog's alleged liability for Ommen's "bodily injury" was caused in whole or in part by QTC's acts or omissions in the performance of QTC's ongoing operations for Herzog under the Subcontract Agreement.**

ANSWER: Denied.

73. **The insurance for Herzog under the Burlington policy with respect to the Ommen lawsuit is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory.**

ANSWER: TBIC admits that its policy includes a primary and noncontributory endorsement, subject to the endorsement's requirements and limitations. Burlington denies that the subcontract independently enlarges its policy obligations, creates a separate limit for Herzog, or requires payment after proper exhaustion of the applicable limit.

74. **Herzog complied with all conditions required for coverage under the Burlington policy with respect to the Ommen lawsuit.**

ANSWER: Denied.

75. **Alternatively, Herzog's compliance with all conditions required for coverage under the Burlington policy was excused or waived by Burlington's breach of its contractual duties to its insured Herzog and other bad faith conduct.**

ANSWER: Denied.

76. **Burlington breached its duty of good faith and fair dealing to its insured Herzog and acted in bad faith by putting Burlington's own interests above those of its insured Herzog including by: (1) reserving the exclusive right to contest or settle any claims brought against its insured Herzog; (2) prohibiting its insured Herzog from voluntarily assuming any liability or settling any claims without Burlington's consent; (3) refusing to even consider Ommen's settlement demand to its insured Herzog; (4) refusing to accept its insured Herzog's requests for coverage including**

**with respect to Ommen's settlement demand to its insured Herzog; (5) deciding to pay Burlington's limits in settlement of Ommen's claims against QTC without making any attempt to secure a release for its insured Herzog or tendering the limits of the Burlington policy to Navigators and making the limits of the Burlington policy available for settlement of Ommen's claims against all of Burlington's insureds including Herzog; (6) failing and refusing to fully investigate and evaluate Ommen's injuries and claims against its insured Herzog; (7) failing to recognize the severity of Ommen's injuries and the probability that a verdict against its insured Herzog would exceed the settlement demand; and (8) failing and refusing to consider its insured Herzog's financial interests at all.**

ANSWER: TBIC denies each allegation of breach, bad faith, preference of its own interests, deficient investigation, disregard of Herzog's interests, and wrongful settlement conduct, including each of subparts (1) through (8). Burlington admits that its policy grants settlement authority and contains the consent provision identified in paragraph 25, subject to the complete policy and applicable law. Those provisions do not establish the alleged misconduct. TBIC denies that it owed a separate policy limit for Herzog, an unconditional duty to remit limits to Navigators, or required payment after proper exhaustion of the applicable limit.

77. **As a direct and proximate result of Burlington's bad faith conduct in breaching its duty of good faith and fair dealing to its insured Herzog and duty to indemnify its insured Herzog against the Ommen lawsuit, Arch and Herzog have sustained damages including the amount of the settlement to resolve Ommen's claims against Herzog and the attorneys' fees incurred in filing this lawsuit against Burlington.**

ANSWER: Denied.

78. **Arch, as Herzog's assignee and equitable subrogee, is entitled to an award of damages caused by Burlington's bad faith, costs, interest, and attorneys' fees.**

ANSWER: Denied.

## COUNT III
## VEXATIOUS REFUSAL TO PAY AGAINST BURLINGTON

79. **Arch restates and incorporates paragraphs 1-78 above as if fully set forth herein.**

ANSWER: Burlington incorporates its responses to the preceding paragraphs 1-78 as if fully set forth here, including each admission, qualification, and denial, and denies that incorporation establishes liability.

80. **Under the Burlington policy, Burlington must pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to which that insurance applies.**

ANSWER: TBIC admits that the insuring agreement contains an obligation to pay covered damages the insured becomes legally obligated to pay, subject to the complete policy, including applicable limits and exhaustion provisions. TBIC denies that additional insured status creates a separate limit, an unconditional obligation to fund the Herzog settlement, or additional payment after proper exhaustion of the applicable limit. TBIC further denies any allegations and conclusions inconsistent with the Burlington policy attached as Exhibit 3.

81. **Herzog is an insured under the Burlington policy with respect to liability for "bodily injury" caused, in whole or in part, by QTC's acts or omissions or the acts or omissions of those acting on QTC's behalf, in the performance of QTC's ongoing operations for Herzog, because QTC agreed in the Subcontract Agreement to add Herzog as an additional insured on the Burlington policy.**

ANSWER: TBIC admits that it accepted Herzog as an additional insured for defense of the Ommen lawsuit, subject to the Burlington Policy. Additional insured coverage extends only as provided by the applicable endorsements. Burlington denies that additional insured status creates a separate limit, an unconditional obligation to fund the Herzog settlement, or additional payment after proper exhaustion of the applicable limit.

82. **The Ommen lawsuit is a "suit" seeking damages covered under the Burlington policy with respect to Ommen's "bodily injury" caused by an "occurrence," which occurred during the policy period and within the coverage territory.**

ANSWER: The allegations of Paragraph 82 are legal conclusions to which no response is required.

83. **Herzog's alleged liability for Ommen's "bodily injury" was caused in whole or in part by QTC's acts or omissions in the performance of QTC's ongoing operations for Herzog under the Subcontract Agreement.**

ANSWER: Denied.

84. **The insurance for Herzog under the Burlington policy with respect to the Ommen lawsuit is primary and non-contributory to the Arch policy because QTC agreed in the Subcontract Agreement that the insurance for Herzog would be primary and non-contributory.**

ANSWER: TBIC admits that its policy includes a primary and noncontributory endorsement, subject to the endorsement's requirements and limitations. Burlington denies that the subcontract independently enlarges its policy obligations, creates a

separate limit for Herzog, or requires payment after proper exhaustion of the applicable limit.

85. **Herzog complied with all conditions required for coverage under the Burlington policy with respect to the Ommen lawsuit.**

ANSWER: Denied.

86. **Alternatively, Herzog's compliance with all conditions required for coverage under the Burlington policy was excused or waived by Burlington's breach of its contractual duties to its insured Herzog and other bad faith conduct.**

ANSWER: Denied.

87. **Since September 3, 2025, Burlington has repeatedly denied coverage for and refused to pay the settlement of Ommen's claims against its insured Herzog, which is covered under the Burlington policy.**

ANSWER: TBIC admits that it disputed an obligation to fund the demand and settlement directed to Herzog. TBIC denies that additional insured status creates a separate limit, an unconditional obligation to fund the Herzog settlement, or additional payment after proper exhaustion of the applicable limit. TBIC denies that any refusal to pay was wrongful, that further policy benefits were owed after proper exhaustion, or that Arch's settlement is necessarily covered or recoverable.

88. **Burlington's denial of coverage and refusal to pay the settlement of Ommen's claims against its insured Herzog was vexatious and without reasonable cause or excuse because Burlington: (1) reserved the exclusive right to contest or settle any claims brought against its insured Herzog; (2) prohibited its insured Herzog from voluntarily assuming any liability or settling any claims without Burlington's consent; (3) refused to even consider Ommen's settlement demand to its insured Herzog; (4) refused to accept its insured Herzog's requests for coverage including with respect to Ommen's settlement demand to its insured Herzog; (5) decided to pay Burlington's limits in settlement of Ommen's claims against QTC without making any attempt to secure a release for its insured Herzog or tendering the limits of the Burlington policy to Navigators and making the limits of the Burlington policy available for settlement of Ommen's claims against all of Burlington's insureds including Herzog; (6) failed and refused to fully investigate and evaluate Ommen's injuries and claims against its insured Herzog; (7) failed to recognize the severity of Ommen's injuries and the probability that a verdict against its insured Herzog would exceed the settlement demand; and (8) failed and refused to provide any factual or legal basis that actually supports its denial of coverage.**

ANSWER: TBIC denies that it acted vexatiously or without reasonable cause or excuse and denies each allegation of wrongful conduct in subparts (1) through (8). TBIC admits that its policy grants settlement authority and includes the consent provision identified in

paragraph 25, subject to the complete policy and applicable law. Burlington denies that those provisions, or a good faith settlement for QTC under a shared limit, establish liability.

89. **Pursuant to Mo. Rev. Stat. §§ 375.296 and 375.420, Arch, as Herzog's assignee and equitable subrogee, is entitled to an award of damages, interest, and attorneys' fees as a result of Burlington's vexatious denial of coverage and refusal to pay the settlement of Ommen's claims against its insured Herzog, without reasonable cause or excuse.**

ANSWER: Denied

## COUNTS IV - VII

The allegations contained in Counts IV-Count VII are not directed toward Defendant TBIC, and therefore, no response is required. To the extent a response is deemed necessary, TBIC denies any allegations that purport to impose liability upon it and demands strict proof thereof.

## AFFIRMATIVE DEFENSES

TBIC asserts the following affirmative and other defenses separately and, where appropriate, in the alternative, without assuming any burden of proof otherwise assigned to Arch by law.

### FIRST DEFENSE
### Good Faith Settlement on Behalf of the Named Insured

1. TBIC issued a liability policy to its named insured, Quality Traffic Control Inc. ("QTC"), under which Herzog qualified for additional insured coverage subject to the policy's terms.

2. Ommen asserted claims and presented separate settlement demands concerning QTC and Herzog arising from the same occurrence.

3. TBIC was entitled to consider and accept a reasonable settlement protecting QTC from liability. Missouri law does not categorically prohibit settlement for fewer than all insureds merely because the settlement exhausts available coverage.

4. TBIC acted reasonably and in good faith in resolving the demand against QTC and communicating its position to Herzog. The absence of a release for Herzog does not, standing alone, establish breach or bad faith.

5. Accordingly, Arch's claims are barred to the extent they rest solely on TBIC's acceptance of a reasonable, good faith settlement protecting QTC without obtaining Herzog's release.

### SECOND DEFENSE
### Shared Occurrence Limit and No Separate Limit for Each Insured

6. The TBIC policy provides a $1,000,000 each-occurrence limit applicable to covered damages arising from the occurrence alleged in the Ommen lawsuit.

7. QTC's status as named insured and Herzog's status as additional insured do not create separate each-occurrence limits. The applicable limit is shared, subject to the policy's limits-of-insurance provisions.

8. Neither the additional insured endorsements nor any primary and noncontributory provision increases that limit or requires TBIC to furnish a second limit after the first has been properly exhausted.

9. Arch therefore cannot recover additional contractual indemnity benefits exceeding the applicable, unexhausted policy limit merely because it seeks payment on behalf of another insured.

### THIRD DEFENSE
### Payment and Exhaustion of Contractual Obligations

10. To the extent TBIC paid the applicable limit in a covered, good faith settlement of Ommen's claims against QTC, that payment exhausted the indemnity coverage available for the occurrence.

11. Under the policy provision terminating the defense obligation upon exhaustion through payment of covered judgments or settlements, TBIC's continuing contractual defense obligation likewise ended upon effective exhaustion.

12. TBIC was not required to replenish exhausted limits or continue providing benefits that the policy expressly terminates upon proper exhaustion.

13. Accordingly, Arch's claims for contractual benefits accruing after effective exhaustion are barred. This defense depends on actual policy-compliant exhaustion, rather than an unaccepted offer or announcement of an intention to tender limits.

### FOURTH DEFENSE
### No Contractual Obligation to Fund Settlement Above Available Limits

14. Arch seeks reimbursement of a settlement funded on Herzog's behalf. TBIC's contractual indemnity obligation is governed by the policy's coverage grant and available limits, rather than the amount Arch elected to pay.

15. TBIC had no contractual obligation to contribute its own funds above the applicable policy limit to secure Herzog's release or achieve a settlement releasing every defendant.

16. To the extent Arch seeks damages exceeding available contractual benefits, such recovery requires proof of an independently actionable wrong and resulting damages. The existence of an additional insured or competing settlement demand does not itself establish that liability.

**FIFTH DEFENSE**
**Additional Insured Coverage Does Not Encompass Every Liability of Herzog**

17. The additional insured endorsements described in the Complaint limit coverage to qualifying liability for bodily injury caused, in whole or in part, by QTC's acts or omissions, or those acting on its behalf, in performing the specified operations.

18. TBIC's acceptance of Herzog's defense did not establish that every component of Herzog's settlement constituted covered indemnity.

19. Recovery is barred or limited to the extent the settlement includes liability outside the additional insured coverage grant. Any covered recovery remains subject to the applicable available limits.

**SIXTH DEFENSE**
**Arch Acquired No Greater Contractual Rights Than Herzog Possessed**

20. Arch asserts claims as Herzog's assignee and subrogee.

21. Those derivative rights remain subject to the policy's coverage limitations, applicable limits, proper exhaustion, and defenses enforceable against Herzog.

22. Neither assignment nor subrogation creates a separate policy limit, restores exhausted contractual benefits, or converts QTC's subcontract obligations into additional insurance obligations of TBIC.

WHEREFORE, Defendant THE BURLINGTON INSURANCE COMPANY prays: for a judgment finding that TBIC is not obligated under policy no. 860BG04026-02 to defend or indemnify alleged additional insured Herzog in the Ommen lawsuit, filed in Buchanan County, Missouri Circuit Court, Case No. 24BU-CC01104, and for entry of such other relief as this Court deems proper.

Dated: October 21, 2026

Respectfully Submitted,

By: ___________________
One of the Attorneys for
The Burlington Insurance Company

Rosa M. Tumialán, *pro hac vice*
Jennifer A. Dancy
233 S. Wacker Dr 61st Floor
Chicago, IL 60606
rtumialan@tresslerllp.com
jdancy@tresslerllp.com
(312) 627 4191